**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| Travis Forrest,<br><br>Plaintiff,<br><br>v.<br><br>CSX Transportation, Inc.,<br><br>Defendant. | Case No. 3:22-cv-00039<br><br>**CORRECTED AMENDED COMPLAINT**<br>(JURY TRIAL DEMANDED) |
|---|---|

## INTRODUCTION

1. Travis Forrest was a loyal employee for CSX Transportation, Inc. for nearly twenty years. Then, he was assigned a new supervisor, who disparately applied CSX's workplace rules against black employees. Forrest confronted the supervisor, after which the supervisor accused Forrest of leaving work without permission even though he had given Forrest permission, and CSX terminated Forrest. CSX's conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("1981").

2. Forrest's union appealed his termination to an arbitrator. The arbitrator found that Forrest's termination violated his union's collective bargaining agreement with CSX and reinstated Forrest. CSX, however, refused to reinstate Forrest unless he produced certain medical records to it. Forrest would obtain and produce the records, but CSX would then claim it did not receive the records, and Forrest would have to do it again. Then, CSX would claim it needed some other record. After a while, it became clear that CSX had no intention of returning to Forrest to work. CSX's conduct violates the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA").

## PARTIES

3. Forrest, a black individual, resides and works for CSX in this district.

4. CSX, a railroad carrier headquartered in Jacksonville, operates trains around the country, including in this district.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

6. This Court has personal jurisdiction over CSX because CSX operates trains in this district and a substantial portion of CSX's acts and omissions giving rise to Forrest's claims occurred in this district.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of CSX's acts and omissions giving rise to Forrest's claim occurred in this district.

## FACTUAL ALLEGATIONS

8. Forrest worked for CSX for nearly twenty years.

9. Then, Forrest was assigned a new supervisor, who was white.

10. The new supervisor disparately applied CSX's workplace rules against black employees.

11. Forrest confronted the new supervisor.

12. Shortly after the confrontation, the new supervisor accused Forrest of leaving work without permission, and CSX terminated Forrest.

13. Forrest had left work earlier, but he had told another supervisor he was going to leave early and the supervisor had not objected.

14. It was customary for Forrest and others to leave early in this way, and no

one had ever taken issue with it.

15. Forrest's union appealed his termination to an arbitrator.

16. The arbitrator found that Forrest's termination violated CSX's collective bargaining agreement with Forrest's union and reinstated Forrest.

17. Upon the arbitrator's order, CSX told Forrest that he would need to attend a physical before it would return him to service.

18. When it ordered Forrest to attend the physical, CSX had no reason to believe any medical condition prevented him from safely performing his job's essential functions.

19. Through the physical, CSX learned that Forrest suffers from sleep apnea, which it used as a basis to refuse returning Forrest to work, telling Forrest that he had to produce records demonstrating that his sleep apnea was under control.

20. CSX had no reason to believe Forrest's sleep apnea prevented him from safely doing his job.

21. Nevertheless, Forrest obtained and submitted the applicable records to CSX.

22. Still, CSX did not reinstate Forrest, instead telling him that it had learned through the physical also that he suffers from anxiety and that he needed to be seen and cleared by a doctor on his owe dime for that condition before it would return him to work.

23. It is not at all clear why CSX waited to raise this issue, which it knew about months prior. And, in any event, CSX had no reason to believe anxiety or any other condition prevented Forrest from safely performing his job's essential functions.

24. Nevertheless, Forrest went to his doctors, was seen by them, and got a note from them, clearing Forrest to return to work without restrictions. In the note, Forrest's

doctors explained to CSX that he did not, in fact, suffer from anxiety and that the symptoms from which he had suffered had been caused by sleep apnea, which was now under control.

25. Still, CSX did not reinstate Forrest, this time telling him that it had learned through his physical that he has a heart monitor and that it needed more information about said monitor before it would return him to work.

26. It is not at all clear why CSX waited until after Forrest had already been seen by his doctors to return to work to raise this issue, which it knew about months prior. And, in any event, CSX had no reason to believe Forrest having a heart monitor was indicative of anything having to do with any condition that prevented him from safely performing his job's essential functions. Nevertheless, Forrest obtained and provided to CSX all of the information it requested.

27. Still, CSX did not reinstate Forrest, now telling him it needed more records regarding his sleep apnea. It is not at all clear why CSX needed more information than what he'd already provided to it regarding his sleep apnea. Neither is it clear why CSX did not request the information the first go round, when it initially requested information from Forrest about his sleep apnea. Again, CSX had no reason to believe that his sleep apnea prevented Forrest from safely performing his job's essential functions, and Forrest nevertheless provided the requested information to it.

28. Still, CSX did not reinstate Forrest, this time telling him that he again had to see a doctor on his own dime and be cleared to return to work for anxiety. Mind you, Forrest had already provided a doctor's note to CSX making clear that Forrest does not suffer from anxiety. Nevertheless, Forrest agreed to be seen by a doctor for anxiety and get cleared to return to work.

29. Forrest provided the records from that doctor to CSX; yet, CSX did not reinstate Forrest. Instead, it told him that he had taken too long to get the records and terminated him.

## **CAUSES OF ACTION**

### COUNT I
### DISCRIMINATION – TITLE VII

30. Section 2000e-2(a) of Title VII prohibits discrimination because of race.

31. CSX discriminated against Forrest when it terminated him.

32. CSX terminated Forrest because of his race.

33. Because CSX violated 42 U.S.C. § 2000e-2(a), Forrest has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount to be determined by the trier of fact. Forrest is also entitled to attorneys' fees and costs incurred in connection with these claims.

34. CSX committed the above-alleged acts with reckless or deliberate disregard for Forrest's rights. As a result, Forrest is entitled to punitive damages.

### COUNT II
### RETALIATION– TITLE VII

35. Section 2000e-3(a) of Title VII prohibits retaliation against employees for opposing violations of Title VII.

36. Forrest opposed a violation of Title VII when he confronted his supervisor about his supervisor's disparate application of CSX's workplace rules.

37. CSX retaliated against Forrest when it terminated him.

38. CSX would not have terminated Forrest had he not opposed his supervisor's disparate application of its workplace rules against black employees.

39. Because CSX violated 42 U.S.C. § 2000e-3(a), Forrest has suffered and will

continue to suffer loss of income, emotional distress, and other damages in an amount to be determined by the trier of fact. Forrest is also entitled to attorneys' fees and costs incurred in connection with these claims.

40. CSX committed the above-alleged acts with reckless disregard or deliberate disregard for Forrest's rights and safety. As a result, Forrest is entitled to punitive damages.

**COUNT III**
**DISCRIMINATION – 1981**

41. CSX terminated Forrest because he is Black, in violation of 42 U.S.C. § 1981.

42. As a result of the violation of 42 U.S.C. § 1981, Forrest suffered damages including emotional distress and loss of income. He will continue to do so.

43. CSX terminated Forrest with reckless or deliberate disregard for Forrest's rights. As a result, Forrest is entitled to punitive damages.

**COUNT IV**
**RETALIATION – 1981**

44. CSX terminated Forrest because he opposed discrimination against Black employee, in violation of 42 U.S.C. § 1981.

45. As a result of the violation of 42 U.S.C. § 1981, Forrest suffered damages including emotional distress and loss of income. He will continue to do so.

46. CSX terminated Forrest with reckless or deliberate disregard for Forrest's rights. As a result, Forrest is entitled to punitive damages.

**COUNT V**
**INQUIRY – ADA**

47. CSX ordered Forrest to submit to a medical examination and produce his medical information and/or records without cause to believe he suffered from any condition

that prevented him from safely doing his job, in violation of the ADA.

48. As a result of the violation of ADA, Forrest suffered damages including emotional distress and loss of income. He will continue to do so.

49. CSX violated Forrest's ADA rights with reckless or deliberate disregard. As a result, Forrest is entitled to punitive damages.

**COUNT VI**
**DISCRIMINATION – ADA**

50. CSX put the onus on Forrest to arrange and pay for the examinations to which it required him to submit, and to obtain and produce his records to it, and it then terminated him for supposedly failing to timely obtain and produce them even though he had jumped through every hoop it had erected as soon as practical, in violation of the ADA.

51. As a result of the violation of ADA, Forrest suffered damages including emotional distress and loss of income. He will continue to do so.

52. CSX violated Forrest's ADA rights with reckless or deliberate disregard. As a result, Forrest is entitled to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Forrest prays for judgment against CSX as follows:

1. That the practices of CSX complained of herein be determined and adjudged to constitute violations of 1981, Title VII and/or the ADA;

2. For an injunction against CSX and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

3. For the discipline at issue in this case to be expunged from his record;

4. For an award of damages arising from loss of past and future income, emotional distress, and other compensatory damages in an amount to be determined by the trier of fact;

5. For the maximum amount of punitive damages allowed by statute;

6. For an award of pre-judgment interest, as provided by law;

7. For an award of Forrest's costs, disbursements and attorneys' fees pursuant to law;

8. For all relief available under 1981, the ADA, and/or Title VII;

9. For such other and further relief available by statute; and

10. For such other and further relief as the Court deems just and equitable.

Dated: August 28, 2023

**PLAINTIFF'S COUNSEL**

s/ *Nicholas D. Thompson*
Nicholas D. Thompson (MN389609)
Casey Jones Law
3520 Cherryvale Avenue, Suite 83
Appleton, WI 54913
Phone: (757) 477-0991
Email: nthompson@caseyjones.law

**CERTIFICATE OF SERVCE**

I hereby certify that on August 28, 2023, a true and correct copy of the foregoing **CORRECTED AMENDED COMPLAINT** was served by CM/ECF to the parties registered to the Court's CM/ECF system:

W. Bryan Smith
BRYAN SMITH & ASSOCIATES
119 S. Main Street, Suite 500
Memphis, TN 38103
bryan@bluffcitylawyers.com

Christopher W. Cardwell
Mary Taylor Gallagher
Sarah L. Locker
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 3rd Avenue South, Suite 1700
Nashville, Tennessee 37219
ccardwell@gsrm.com
mtgallagher@gsrm.com
slocker@gsrm.com

/s/ Nicholas Thompson
Nicholas Thompson